UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNA HONG,<br><br>          Plaintiff,<br><br>    v.<br><br>RUGSUSA, LLC,<br><br>          Defendant. | Case No. 24-cv-08799-AMO<br><br>**ORDER RE DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE**<br><br>Re: Dkt. No. 15 |

This is a putative consumer class action involving allegations of fake price discounts on Defendant RugsUSA, LLC's ("RugsUSA") website. RugsUSA's motion to dismiss and/or strike the operative Complaint was heard before this Court on July 10, 2025. Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court hereby **GRANTS in part and DENIES in part** RugsUSA's motion for the following reasons.

**I.     BACKGROUND[1]**

RugsUSA sells rugs and home accessory products on its website, www.rugsusa.com. Compl. (Dkt. No. 1) ¶ 16. On its website, RugsUSA advertises purported time-limited, site-wide sales on its products. Compl. ¶¶ 20-25. RugsUSA's advertisements represent that consumers will receive "discounts" off of "regular prices," and that these discounts are time-limited. Compl. ¶¶ 20-25. RugsUSA's advertisements convey that, through the advertised promotion, consumers will get a special discount off of regular prices, a discount that is not usually available. Compl.

---

[1] This factual background is taken from the allegations in the operative Complaint, which the Court accepts as true and construes in the light most favorable to Hong for the purpose of the instant motion. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

1    ¶¶ 26-28, 36-37.  Consumers rely on RugsUSA's representations and are led to believe that the

2    "regular" prices listed on RugsUSA products (the ones to which the discount is applied) are the

3    prices that consumers usually and regularly have to pay to buy RugsUSA products.  Compl. ¶¶ 26-

4    28, 36-37.  Based on this, consumers buy quickly, believing that this will get them a special deal

5    on a product worth more than what they are paying.  Compl. ¶¶ 26-28, 36-41; *see also id.* ¶¶ 39-40

6    (summarizing example research showing how discounts drive sales).

7        In truth, "Defendant almost always offers discounts off the purportedly regular prices it

8    advertises."  Compl. ¶ 28.  "[R]andomly selected screenshots" from the period "beginning October

9    13, 2023, through November 22, 2024[,]" found that "138 out of 150 of those screenshots

10   displayed a purportedly time-limited sitewide sale."  Compl. ¶ 25.  "As a result, everything about

11   Defendant's price and purported discount advertising is false. . . . Defendant's Products are

12   constantly available for less than [the regular price], and customers did not have to formerly pay

13   that amount to get those items.  The purported discounts Defendant advertises are not the true

14   discount the customer is receiving, and are often not a discount at all."  Compl. ¶ 28.  Such

15   purported discounts are thus not time-limited – "quite the opposite, they are almost always

16   available."  *Id.*

17       RugsUSA's false pricing conduct harms consumers by inducing them to make purchases

18   based on the false information conveyed by RugsUSA's advertisements.  Compl. ¶ 41.

19   RugsUSA's advertisements also artificially increase consumer demand for its products, enabling

20   RugsUSA to charge a price premium that it would not be able to charge absent its

21   misrepresentations.  Compl. ¶ 41.  As a result, consumers pay more for RugsUSA's products than

22   they otherwise would have.  Compl. ¶ 41.

23       Plaintiff Anna Hong is a California resident who purchased a RugsUSA "Chaya Persian

24   Medallion Rug" from RugsUSA on September 2, 2024.  Compl. ¶¶ 2, 42.  "When Mrs. Hong

25   made her purchase, Defendant's website represented that the RugsUSA Chaya Persian Medallion

26   Rug had a regular price of $83.99, but was discounted $20.99 for a sale price of $63."  Compl.

27   ¶ 42.  In an "email order confirmation" that RugsUSA sent to Hong after she made her purchase,

28   RugsUSA represented "that the Products had a certain regular price" and that Hong "was receiving

a substantial discount for the rug that she purchased." Compl. ¶ 43. Hong read and relied on RugsUSA's "representations on the website, specifically that the Products were being offered at a discount for a limited time and had the regular prices listed above." Compl. ¶ 44. "She relied [on] the representations that the sale was time-limited[,]" she understood "this regular price was the market value of the Products that she was buying," and she "would not have made the purchase if she had known that the Products were not discounted as advertised, and that she was not receiving the advertised discount." Compl. ¶ 44. Further, RugsUSA's products "are almost always available at a discounted price off of the purported regular prices" and "Defendant did not regularly sell the Products Mrs. Hong purchased at the purported regular prices." Compl. ¶ 45.

Hong initiated this lawsuit by Complaint filed on December 6, 2024. Dkt. No. 1. Hong asserts causes of action for

- (1) violation of California's False Advertising Law (the "FAL," Bus. & Prof. Code §§ 17500 & 17501 et. seq.);
- (2) violation of California's Consumer Legal Remedies Act (the "CLRA");
- (3) violation of California's Unfair Competition Law (the "UCL," Bus. & Prof. Code § 17200) (all three prongs);
- (4) breach of contract;
- (5) breach of express warranty;
- (6) quasi-contract/unjust enrichment (as an alternative to the breach of contract claim);
- (7) negligent misrepresentation; and
- (8) intentional misrepresentation.

## II. DISCUSSION

Rugs USA moves to dismiss the action for failure to state a claim under Rule 12(b)(6), and it moves to strike Hong's class claims. The Court first takes up the motion to dismiss, analyzing each of Defendant's arguments in turn, before considering to the motion to strike.

### A. Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock*, 349 F.3d 1191, 1199-1200 (9th

Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, it need not accept legally conclusory statements unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679.

Review is generally limited to the contents of the complaint, although the court can also consider a document on which the complaint relies if the document is central to the claims asserted in the complaint, and no party questions the authenticity of the document. *See Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). The court may consider matters that are properly the subject of judicial notice, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001), and may also consider documents referenced extensively in the complaint and documents that form the basis of the plaintiffs' claims. *See No. 84 Emp'r-Teamster Jt. Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 925 n.2 (9th Cir. 2003).

Plaintiffs' claims that sound in fraud must also meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Rule 9(b) requires a party alleging fraud or mistake to state with particularity the circumstances constituting fraud or mistake. To satisfy this standard, the "complaint must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or

1  misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia*
2  *Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation and internal quotation marks omitted). If
3  dismissal is warranted, it is generally without prejudice, unless it is clear that the complaint cannot
4  be saved by any amendment. *Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005).

### 1. California Consumer Protection Statutes

"Under the consumer protection laws of California[,] . . . claims based on deceptive or misleading marketing must demonstrate that a 'reasonable consumer' is likely to be misled by the representation." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021); *see Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003). "Under the reasonable consumer standard, [plaintiffs] must show that members of the public are likely to be deceived." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "The California Supreme Court has recognized that these laws prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Id.* at 938 (internal quotation marks omitted) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)). The reasonable consumer test requires more than a mere possibility that defendant's product "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). Rather, the test requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.*; *see also Moore*, 4 F.4th at 881.

In this case, Hong attempts to proceed on a price comparison theory of consumer fraud, a theory under which the practice of labeling products as discounted when in fact they have never been sold at the higher price can violate California's consumer protection laws. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103-05 (9th Cir. 2013); Cal. Bus. & Prof. Code § 17501. In one form of false price comparison, courts have found that advertising a struck through price as a "former price comparison" may constitute a deceptive advertising practice, particularly where the defendant had not previously offered the product at the enumerated former price. *See, e.g.*, *Inga v.*

*Bellacor.com, Inc.*, No. 219CV10406MWFMRW, 2020 WL 5769080, at *3 (C.D. Cal. July 17, 2020).

### a. Allegations about Plaintiff's Purchase

RugsUSA argues that the Complaint "fails to plead facts regarding Plaintiff's purchase or the discount she allegedly received." Mot. (Dkt. No. 15) at 8. Not so. The Complaint contains facts about Hong's purchase and purported discount. On September 2, 2024, while living in Oakland, California, Hong "purchased a RugsUSA Chaya Persian Medallion Rug from Defendant's website while a sale was on-going." Compl. ¶ 42. When she made her purchase, "Defendant's website represented that the RugsUSA Chaya Persian Medallion Rug had a regular price of $83.99, but was discounted $20.99 for a sale price of $63." *Id.* The website represented that the product was "being offered at a discount for a limited time." Compl. ¶ 44. In reality, however, the product was "almost always available at a discounted price off of the purported regular price[]." Compl. ¶ 45. And "the sale was not time limited," because the product was "routinely on sale." *Id.* Hong alleges what she bought (the rug), where she bought it (online), when (September 2, 2024), the purchase price (a sale price of $63), and representation of full-price value ($83.99). Through these factual contentions, Hong provides sufficient detail in her allegations regarding the "who, what, when, where, and how" of the alleged fraud – the fake discount. She need not allege more. Accordingly, the Court finds that Hong sufficiently alleges facts regarding her purchase and the discount she received and declines to dismiss the California consumer protection claims on this basis.

### b. Allegations of Reliance on Defendant's Representations

RugsUSA contends that "the Complaint contains no facts whatsoever regarding any specific representation(s) Plaintiff saw and/or relied upon in relation to her decision to purchase the specific RugsUSA product that she purchased." Mot. at 10. To the contrary, the Complaint includes allegations that, at the time Hong made her purchase, the website "represented that the RugsUSA Chaya Persian Medallion Rug had a regular price of $83.99, but was discounted $20.99 for a sale price of $63." Compl. ¶ 42. Hong alleges that she "read and relied" on these representations, "specifically that the Products were being offered at a discount for a limited time

6

1    and had the regular prices" described in Defendant's statements.  Compl. ¶ 44.  Hong "would not
2    have made the purchase if she had known that the Products were not discounted as advertised, and
3    that she was not receiving the advertised discount." *Id.*  These allegations are sufficient to
4    demonstrate reliance on the pricing representations.

                                                   **c.     Pre-Suit Investigation**

6    RugsUSA argues that Hong "fails to plead an adequate pre-suit investigation into the
7    product Plaintiff purchased." Mot. at 10.  But courts have found that "plaintiffs are not required to
8    plead that they had conducted a pre-suit investigation – or include the results of such
9    investigations – in every case, particularly where the information is not within the personal
10   knowledge of the pleader." *Stathakos v. Columbia Sportswear Co.*, No. 15-CV-04543-YGR, 2016
11   WL 1730001, at *4 (N.D. Cal. May 2, 2016) (citation omitted).
12   Moreover, although not required, Hong's counsel conducted a pre-suit investigation into
13   RugsUSA's pricing, and the investigation revealed that the products on the RugsUSA website
14   were consistently offered at purportedly time-limited discounted prices.  Hong's counsel collected
15   150 randomly selected screenshots of the RugsUSA website from the Internet Archive's Wayback
16   Machine, from the period beginning October 13, 2023, through November 22, 2024.  Compl. ¶ 25.
17   Over 90% of those screenshots, or 138 out of 150, displayed a purportedly time-limited sitewide
18   sale. *Id.*  Courts in fake discount cases routinely hold such allegations sufficient to satisfy Rule
19   9(b).  *See, e.g.*, *Vizcarra v. Michaels Stores, Inc.*, 710 F. Supp. 3d 718, 730 (N.D. Cal. 2024)
20   ("[T]here is no reason to require [Plaintiff] to individually investigate and track the prices of every
21   Michaels product (or at least the ones she purchased) when the investigation she has already
22   conducted suggests that 'site-wide discounts of at least 20% were always available' during a two-
23   year timeframe.").  Hong's allegations regarding her pre-suit investigation are sufficient to survive
24   at this stage.

                            **d.     Regular Prices Versus Prevailing Market Prices**

26   RugsUSA further argues that Hong does not adequately plead that the advertised " 'regular
27   price' is not, in fact, representative of the rug's 'market value.' " Mot. at 8.  The market value
28   distinction arises under California Business & Professions Code Section 17501, which prohibits

7

advertising a former price for a product "unless the alleged former price was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement." Cal. Bus. & Prof. Code § 17501.

To plausibly allege a Section 17501 violation, Hong must accordingly allege that the advertised regular price was not the prevailing market price. To demonstrate satisfaction of the prevailing market price element, Hong points to her allegations that RugsUSA's ads are plausibly deceptive because they falsely convey that RugsUSA's own regular prices are higher than they truly are. *See* Opp. at 10-11. Hong cites, for example, some cases in which courts found Section 17501 allegations plausible based on inferences that a defendant "would not continually sell products for prices at least 20% less than the market rates at which those products are offered elsewhere." Opp. at 11 (quoting *Vizcarra*, 710 F. Supp. 3d at 727). However, in light of the statutory requirement regarding "prevailing market price," the plaintiff must provide something more than a mere comparison to the defendant's own pricing, particularly where Hong aims to establish that pricing that as untrustworthy and misleading. On this basis, Hong's allegations fall short of establishing a violation of Section 17501, and the Court GRANTS the motion to dismiss the first cause of action with leave to amend.

However, while RugsUSA argues that this prevailing market price deficiency requires dismissal of the other claims as well, no such allegations are required for Hong's other claims. *See, e.g.*, *Vizcarra*, 710 F. Supp. 3d at 729 (holding that "only [Plaintiff's] Section 17501 claims depend on the prevailing market price of the products at issue," and that the "non-Section 17501 FAL claims, as well as the UCL and CLRA claims," do not). For example, Section 17500 reaches more broadly than Section 17501 and prohibits "untrue or misleading" advertisements generally, not just former price comparisons where the former price is out of line with prevailing market prices specifically. *Compare* Cal. Bus. & Prof. Code § 17500 *with* § 17501. Similarly, the CLRA prohibits any false or misleading statements concerning the "existence of, or amounts of price reductions," not only statements where the price to which the reduction is applied is out of line with the prevailing market price specifically. Cal. Civ. Code § 1770(a)(9). Accordingly, to state a

claim for violations of these statutes (as well as the rest of her other claims other than those based on violations of Section 17501) Hong need not allege that RugsUSA's "regular" prices are out of line with prevailing market prices. *See, e.g.*, *Vizcarra*, 710 F. Supp. 3d at 729 (expressly rejecting this argument); *Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 528-29 (C.D. Cal. 2015) ("[E]ven if it were determined that defendant's advertising did not violate § 17501, it could still be liable under the CLRA, the UCL and the more general provision of the FAL."). Therefore, the other causes of action need not face dismissal based on the deficiency in the allegations as to Section 17501. The motion as to these remaining statutory causes of actions is DENIED.

### 2. Breach of Contract

In this district, claims of breach of contract are frequently permitted to stand in fake pricing cases like this. *See, e.g.*, *Vizcarra*, 710 F. Supp. 3d at 731 (finding plaintiff stated a claim for breach of contract where they entered into a purchase contract with an online retailer for "products that had market values equal to the non-discounted list prices while providing a discount," and that the retailer breached the contract by failing to provide the products at an appropriate value and discount); *Freeman v. Indochino Apparel, Inc.*, 443 F. Supp. 3d 1107, 1113 (N.D. Cal. 2020) (concluding plaintiff stated a claim for breach of contract where the online purchase contract required the defendant to "provide a product that had a value equal to the reference price and failed to do so, instead providing clothing of a quality materially less than the value of the Clothing set forth in the contracts." (citation and internal quotation marks omitted)); *Munning v. Gap, Inc.*, No. 16-CV-03804-TEH, 2016 WL 6393550, at *7 (N.D. Cal. Oct. 28, 2016) (advertised price reductions were material and supported claim for breach of contract based on allegations that plaintiffs did not receive "benefit of the bargain," i.e., higher-value product at a price reduction) (citing *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013)).

RugsUSA argues that Hong's breach of contract claim must fail because Hong has not alleged the terms of the contract she entered with Defendant. Mot. at 12-13. Hong alleges that a contract was formed when she placed an order on the website. Compl. ¶ 110. The contract "required that Defendant provide[] Plaintiff . . . with Products that have a market value equal to the regular prices displayed on the website," and "that Defendant provide Plaintiff . . . with a

discount equal to the difference between the price paid, and the regular prices advertised." Compl. ¶ 112. "Defendant breached its contract[] with Plaintiff . . . by failing to provide Products that had a regular price, former price, and/or prevailing market value equal to the regular price displayed on its website, and by failing to provide the promised discount." Compl. ¶ 115. The advertised price reductions challenged by Hong were material to the agreement she entered in purchasing the rug and thus support a claim for breach of contract based on allegations that Hong did not receive "benefit of the bargain." *Hinojos*, 718 F.3d at 1107. In light of the volume of authority supporting the sufficiency of the allegations here, the Court finds Hong's breach of contract claim sufficiently pleaded. The Court therefore DENIES the motion to dismiss the breach of contract claim.

### 3. Express Warranty

California Commercial Code § 2313, which defines the term "express warranty," applies to "transactions in goods." *See* Cal. Comm. Code § 2102; *see also* Cal. Civ. Code § 1791.2(a)(1) (defining "express warranty" as "[a] written statement arising out of a sale to the consumer of a consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or to provide compensation if there is a failure in utility or performance."). "An express warranty is a term of the parties' contract." *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 978 (C.D. Cal. 2014) (citation omitted). To state a claim for breach of express warranty under California law, a plaintiff must allege (1) the exact terms of the warranty; (2) reasonable reliance thereon; and (3) a breach of warranty which proximately caused plaintiff's injury. *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 816-17 (N.D. Cal. 2014) (citing *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986)); *see also Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010) (explaining that to state a claim for breach of express warranty, a plaintiff must allege that the defendant's statements constituted an affirmation of fact or promise or a description of the goods). To allege facts identifying the exact terms of the warranty, a plaintiff must provide "specifics" about what the warranty statement was, as well as how and when it was breached. *See Minkler*, 65 F. Supp. 3d at 816-17. To constitute an actionable express warranty, the statement "must be specific and

unequivocal." *Johnson v. Mitsubishi Digital Elecs. Am., Inc.*, 578 F. Supp. 2d 1229, 1236 (C.D. Cal. 2008). Additionally, the statement must be written. Cal. Civ. Code § 1791.2(a); *Maneely v. Gen. Motors Corp.*, 108 F.3d 1176, 1181 (9th Cir. 1997) (the plaintiff must identify a "specific and unequivocal written statement" about the product that constitutes an "explicit guarantee"). Certain statements, however, cannot serve as the basis of an express warranty. For example, "an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." *Smith v. LG Elecs U.S.A.*, Inc., No. 13-cv-4361-PJH, 2014 WL 989742, at *4 (N.D. Cal. Mar. 11, 2014) (citing Cal. Comm. Code § 2313 and Cal. Civ. Code § 1791.2(a)(2)(b)). Rather, such statements constitute mere puffery that do not support liability under a claim of breach of warranty. *See Long v. Graco Children's Prods. Inc.*, No. 13-CV-01257-WHO, 2013 WL 4655763, at *11 (N.D. Cal. Aug. 26, 2013). Courts find, however, that representations of regular price or market value do not constitute mere puffery and instead represent "a market value equal to the regular non-discounted list price, and that this was part of the basis for the bargain." *See Vizcarra*, 2024 WL 64747, at *8; *see also Munning*, 2016 WL 6393550, at *8 (breach of express warranty adequately alleged where the "complaint specifically identifies that the express warranty was the description provided by the Defendants that the products were being sold at a discounted price").

Hong alleges that RugsUSA "issued material, written warranties by advertising that the Products had a prevailing market value equal to the regular price displayed on Defendant's website." Compl. ¶ 120. "This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods." *Id.* And Hong "relied on this warranty," which "was part of the basis of the bargain." *Id.* ¶ 121. Hong avers that RugsUSA breached the warranty because the product's "stated market value was not the prevailing market value." *Id.* ¶ 122. Resisting these contentions, RugsUSA argues that "affirmation merely of the value of the goods . . . does not create a warranty," and therefore, Hong's express warranty claim fails. Mot. at 15 (quoting *T&M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 876 (N.D. Cal. 2015)). But under California law, an express warranty is "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods." Cal. Comm. Code

11

§ 2313. Here, RugsUSA's representation that the advertised regular price was the prevailing market value "was an affirmation of fact about the Products." Compl. ¶ 120. This constitutes an explicit representation about a fact relating to the product – its value. Indeed, other courts find such allegations sufficient to state a claim for breach of express warranty. *See, e.g.*, *Munning*, 2016 WL 6393550, at *8 (finding that "an advertised discounted price can constitute an express warranty"). Therefore, the Court DENIES the motion to dismiss the claim for breach of express warranty.

### 4. Unjust Enrichment

In California, "there is not a standalone cause of action for 'unjust enrichment.' " *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Rather, "unjust enrichment" and "restitution" can serve as "the theory underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request," the return of which "is the remedy typically sought in a quasi-contract cause of action." *Id.* at 762 (quoting, in part, 55 Cal. Jur. 3d Restitution § 2). "To plead a claim for unjust enrichment, a plaintiff must allege a receipt of a benefit and unjust retention of the benefit at the expense of another." *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 989 (N.D. Cal. 2009). However, when a plaintiff retains the benefit of the product provided and fails to plead how the product received was of lesser value than the one for which she paid, the plaintiff's unjust enrichment claim must be dismissed. *See Myers-Armstrong v. Actavis Totowa, LLC*, 382 Fed. App'x. 545, 548 (9th Cir. 2010) (dismissing unjust enrichment claim where plaintiff failed to plead that the drugs she received were of any lesser value than those for which she paid).

Here, Hong alleges, "Defendant's advertisements artificially increase consumer demand for Defendant's Products." Compl. ¶ 41. "This puts upward pressure on the prices that Defendant can charge for its Products," and allows Defendant to "charge a price premium for its Products, that it would not be able to charge absent the misrepresentations." Compl. ¶ 41. "So, due to Defendant's misrepresentations, Plaintiff and the class paid more for the Products they bought than they otherwise would have." Compl. ¶ 41. Through this theory of price premium, "Defendant received a direct and unjust benefit, at Plaintiff's expense." Compl. ¶ 128. RugsUSA

12

argues that Hong cannot establish unjust enrichment because she "fails to allege how the product she received was of lesser value than the one for which she paid." Mot. at 16. The Court agrees. Hong's allegations regarding the creation of a price premium through the use of price discounts require unreasonable logical leaps about the value of the purchased rug, leaps that the Court need not accept. The Court therefore GRANTS the motion to dismiss the unjust enrichment claim.

### 5. Negligent and Intentional Misrepresentation

The California Supreme Court describes, "[i]n general, there is no recovery in tort for negligently inflicted 'purely economic losses,' meaning financial harm unaccompanied by physical or property damage. . . . [T]he rule functions to bar claims in negligence for pure economic losses in deference to a contract between litigating parties." *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 922 (2022) (citation omitted). "[W]hen one party commits a fraud during the contract formation or performance, the injured party may recover in contract and tort." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004) (citation omitted); *see also Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188, 1191 (9th Cir. 2021), certified question answered, 17 Cal. 5th 1 (2024) ("the economic loss rule does not bar fraud claims premised on affirmative misrepresentations."). The economic loss rule applies when "the parties are in contractual privity and the plaintiff's claim arises from the contract (in other words, the claim is not independent of the contract)." M*oore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 535 (2022) (citing *Sheen*, 12 Cal. 5th at 923); *see also Robinson Helicopter*, 34 Cal. 4th at 991.

Relevant to the claims at issue, the "Ninth Circuit, albeit in unpublished decisions, has held 'that California law classifies negligent misrepresentation as a species of fraud . . . for which economic loss is recoverable.' " *Phillips v. Brooklyn Bedding LLC*, No. 23-CV-03781-RFL, 2024 WL 2830663, at *7 (N.D. Cal. Mar. 28, 2024) (Lin, J.) (quoting *Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*, 315 F. App'x 603, 607 (9th Cir. 2008); *see also Hannibal Pictures, Inc. v. Sonja Prods., LLC*, 432 F. App'x 700, 701 (9th Cir. 2011) (holding that economic loss rule did not bar a suit for negligent misrepresentation where "one party has lied to the other")). "While there remains a split on this issue, district courts in this circuit routinely rely on these decisions to deny

13

1   motions to dismiss negligent misrepresentation claims based on the economic loss rule." *Phillips*,

2   2024 WL 2830663, at *7 (collecting cases).

3         Here, Hong's negligent and intentional misrepresentation claims relate to RugsUSA's

4   representations about the price of the product – particularly the falsity of those representations.

5   Indeed, Hong's negligent and intentional misrepresentation claims stem from the alleged falsity of

6   the pricing representations instead of the contract formed in the course of her online purchase.

7   Compl. ¶¶ 42-43. She alleges that RugsUSA made intentional misrepresentations that

8   fraudulently induced her to purchase a product she otherwise would not have purchased. Compl.

9   ¶¶ 42-43; *see also id.* ¶ 44 ("She would not have made the purchase if she had known that the

10  Products were not discounted as advertised, and that she was not receiving the advertised

11  discount."). As a result, she asserts, she suffered a tortious injury – buying the product in the first

12  place or paying more for it than she otherwise would have been willing to – that is separate from

13  any injury arising from RugUSA's non-performance. Because the negligent and intentional

14  misrepresentation claims sound in fraud, they do not trigger the economic loss rule. *See Rattagan*,

15  19 F.4th at 1191. Therefore, the economic loss rule does not apply to displace Hong's negligent

16  and intentional misrepresentation claims, those claims need not be dismissed as pleaded, and

17  RugsUSA's motion to dismiss them is DENIED.

18        **B.**    **Motion to Strike Class Claims**

19        RugsUSA moves to strike Hong's class claims on the basis that the proposed class

20  definition is overbroad. *See* Mot. at 17. The function of a motion to strike under Rule 12(f) is to

21  "avoid the expenditure of time and money that must arise from litigating spurious issues by

22  dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970,

23  973 (9th Cir. 2010) (citation and internal quotation marks omitted). A court may "strike class

24  allegations prior to discovery if the complaint demonstrates that a class action cannot be

25  maintained." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010); *Sanders*, 672 F.

26  Supp. 2d at 990; *see also* Fed. R. Civ. P. 23(d)(1)(D) (a court may "require that the pleadings be

27  amended to eliminate allegations about representation of absent persons and that the action

28  proceed accordingly."). However, motions to strike class allegations are disfavored because a

14

1   motion for class certification is a more appropriate vehicle for arguments pertaining to the class

2   allegations.  *See Thorpe v. Abbott Laboratories, Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal.

3   2008); *Azad v. Tokio Marine HCC-Med. Ins. Servs. LLC*, No. 17-cv-00618-PJH, 2017 WL

4   3007040, at *8 (N.D. Cal. July 14, 2017); *see also In re Wal-Mart Stores, Inc. Wage & Hour*

5   *Litig.*, 505 F. Supp. 2d 609, 614-15 (N.D. Cal. 2007) ("Generally, courts review class allegations

6   through a motion for class certification.").  The decision whether to strike allegations is a matter

7   within the court's discretion.  *Biggins v. Wells Fargo & Co.*, 266 F.R.D. 399, 406 (N.D. Cal.

8   2009).

9         Here, RugsUSA challenges as overbroad the proposed class that includes "all persons who,

10  while in the state of California and within the applicable statute of limitations period, purchased

11  one or more RugsUSA Product advertised at a discount on Defendant's website on or after

12  October 13, 2023."  Compl. ¶ 56.  But questions about ascertainability of the class are "best

13  decided at the class certification stage with the benefit of more complete briefing and development

14  of the record."  *TopDevz, LLC v. LinkedIn Corp.*, 2021 WL 3373914, at *12 (N.D. Cal. Aug. 3,

15  2021).  Accordingly, the Court accordingly DENIES the motion to strike the class allegations at

16  the pleading stage.

### III.    CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** RugsUSA's motion to dismiss.  The Court **DISMISSES** the first cause of action for violation of the FAL and the sixth cause of action for unjust enrichment, both with leave to amend.  The Court **DENIES** the motion to strike class allegations.  Hong may file an amended complaint within 28 days from the date of this Order.  No additional parties or claims may be added without leave of Court or stipulation of Defendant.

**IT IS SO ORDERED.**

Dated: September 23, 2025

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**